The first case is United States of America v. Ben McCormack, No. 20-2167. You may proceed. Thank you, and may it please the Court, my name is Quinn Sorensen and I do represent the defendant Ben McCormack in this matter. I'd like to reserve three minutes for rebuttal if I may. Granted. Thank you again. There was insufficient evidence in this case that the defendant, Mr. McCormack, knew that the individuals to whom he transferred stolen firearms would use those firearms illegally, such that the enhancement under Subsection B-5 of 2K2.1 of the Guidelines could be applied. Indeed, the District Court never may... Counsel, may I interrupt for a moment? Please. I'd like to know, based on your supplemental papers, should we understand that you waive any claim to procedural error with regard to the District Court's reference to and quotation from 2K2.1B-6? I do not believe so, Your Honor. The purpose of the supplemental filing I did was to ensure that the Subsection B-6 finding of the District Court would not be interpreted to allow for a finding that Subsection B-5 could be imposed. It was not intended and should, I would hope, would not be viewed as a waiver of any procedural objection I would have to the lack of a finding under B-5, because I do think that that is a critical point, although not the most critical point if you look at the record itself, which I don't think could support the finding in any event. And if you get to that stage where you actually assess the record and you start with the principal basis on which the B-5 enhancement was alleged to be imposed or applicable by the government below, and that was because of transfers from Mr. McCormick to at least two buyers of a number of firearms in exchange for money and other services. And the issue at the District Court level was whether those buyers could be found to be people whom Mr. McCormick would engage in criminal activity or would use the firearms to engage in criminal activity. And there was no evidence of that sort. The only evidence you have in the pertinent record is in the pre-sentence report. It's a paragraph four, which states that these buyers, at least one of them I should say, was known to investigators to be involved in drug trafficking. But the critical point for these purposes, and the one obviously I've made in the briefing, is that at no point does in the plea colloquy and at no point in the pre-sentence report is there an allegation that Mr. McCormick knew that these people were engaged in drug activity or anything else. And more importantly, perhaps, there is no description of any of the transactions, how they occurred, when they occurred, why they occurred, what Mr. McCormick's history was with these people. And so you cannot make any inference, as has been done in prior cases, that maybe he should have known or had reason to know that these individuals were engaged in drug trafficking. For instance, you put a lot of emphasis on what's in the PSR, but what your client admitted when arrested, et cetera, that the sentencing court is entirely entitled to consider any number of things beyond what's in the PSR. And so what's your response? Those things appear to support the inference that your client's arms were being trafficked for these purposes. Yes, thank you for your question, Your Honor. What you're referring to, I believe, is the motion for downward departure in which there's a number of representations made by the government and the prosecution about what Mr. McCormick may have said after the time of the arrest. That was never entered into evidence. That was merely the motion that was submitted. There was no affidavit attached to it, nothing of that sort. Okay, the rules of evidence don't apply at sentencing. And that's my next point. It was actually not part of the record that was ever considered or submitted with respect to the B-5 motion. The government never suggested when that motion was under, or when that enhancement was being considered at the second part of the sentencing proceeding after the downward departure motion had been already adjudicated, never suggested that those allegations should, would, could be considered by the district court. But I'm not aware of any law that precludes the court from considering it. I mean, Williams v. United States is still good law, and there's more here than there was in Williams about what happened there. Well, yeah, I think you have to consider what the government submitted in support of its enhancement. Nothing in the pre-sentence report referred to these allegations. Nothing the district court never referred to them. So I would submit that the record considered by the district court, the one that should be considered on appeal, is only that that was considered at the sentencing hearing itself. That's the pre-sentence report and the plea colloquy. But if we take it a step further, and this is getting to the more fundamental problem with considering that particular motion, I believe, beyond that it's not evidence, beyond that it was never submitted and it's not part of the record, is that actually it's precluded, arguably, under the rules of, under the guidelines, as well as the plea agreement, subsection 1B1.8A provides. And so does the plea agreement. That self-incriminating information provided pursuant to a cooperation agreement cannot be supplied, cannot be considered by Was this provided pursuant to a cooperation agreement? Well, that's the question, and that's the problem. In order to allow for that information to be considered, there would have to be a finding under A1 of that particular provision of the guidelines and of the plea agreement by the district court that, in fact, this was a cooperation agreement. Now, here in evidence, we have a plea agreement that was executed in November of 2017. There were proffer agreements that are not part of the record that were executed before then. We don't have any record of them because this was never an issue of the district court. And if the government wanted to introduce this information as information it knew before based on admissions of Mr. McCormick, then it had an obligation at that time to submit it and to offer proof not only that the information was submitted at the time it alleged by Mr. McCormick, which has not been proven, but also that there was no proffer agreement. At this point in time, because the government didn't take that step, never submitted this information under subsection A1 exception to 1B1.8, there was no record created, and it has now waived its opportunity to make that argument, it might be. Let's assume we don't buy this argument, but let's assume you are declining to waive a B5, B6 procedural error argument. Let's assume we think there's a procedural error, but you didn't, you know, you didn't preserve it properly. Should we find that this is plain error such that we should remand? Where's the prejudice here? Well, I think the prejudice would be with the, I'm sorry, go ahead, John. Where's the prejudice on the district courts mentioning B6, B5? I mean, they're fairly similar enhancements, so does it affect substantial rights here? Well, I think it does. First of all, I would say you don't get the plain error review because in my reply, in the brief, in the opening brief and in the reply brief, I made clear that I think the reference to B6 is itself an error of that type. Now, if you go to plain error, I think that's also going to be plain error and one that affects substantial rights in the sense that here you have a reference by the district court to an entirely different subsection of the guidelines, to an entirely different provision, made that finding, never made any finding whatsoever, despite an objection that this particular section, B5, applied. That is plain error in its most plain sense, to my mind. No, I'm granting you that there's error and that it is plain. I want to talk about prong three of Olano. What's the reasonable probability that you would have had a different outcome here? Well, I think the probability is almost a certainty because if you do not apply that, so if you don't have a finding under B5 that it can be applied, then you don't get the four level enhancement. The offense level goes down by four level and that drops the sentencing range. But you're breaking the question. Forgive me. I'm not being very clear. What leads us to believe there's a reasonable probability that there would have been a different outcome if the district court had, you know, in fact, not mentioned, you know, had mentioned the four levels. I understand. And then you get back to the merits question, in my view, and you do get to the question that I was addressing at the outset here, which is to say that there was no evidence in this record that could support a finding that Mr. McCormick knew that these individuals would be using these weapons illegally. And that is because, again, you go down to the pre-sentence report. You also go to the plea colloquy. What he admitted and what we admitted was only that investigators knew that these people were involved in drug trafficking. Otherwise, you have no description of the buys, no description of the transaction, no description of their history on which you could make a finding of that sort. And the only other basis that the district court, the government offered for application of this enhancement, again, it never offered that the allegations concerning the in the downward departure motion. So I think that's waived. But the only other basis now argues for application of the B-5 enhancement is that there were transfers allegedly also between Mr. McCormick and his co-conspirators, to Mr. Thorne and to the unnamed co-conspirator that's identified in paragraph six of the pre-sentence report. And I would say there's a couple of problems with that. Well, three problems at least. One, this argument was really there was never a finding in the district court that a transfer occurred to these co-conspirators or that would support B-6, B-5, whatever. There was no finding whatsoever. So that's not even something to be reviewed for clear error. Second, there was no allegation in the pre-sentence report or elsewhere that Mr. McCormick would know that the firearms that were taken by his co-conspirators would themselves be used in illegal activities. They were of course engaged in illegal activities with Mr. McCormick, but there's nothing to say that Mr. McCormick would know that the firearms that they took would be used for an illegal purpose. Why isn't there a reasonable inference? Why isn't there a reasonable inference that it would be used in criminal activity? Well, I don't, I think, I take your point that at least here we have some evidence that these co-conspirators were engaged in an illegal activity. So the question gets a little bit more dicey than with the buyers because the buyers, we have no evidence of their history. But I think the more fundamental point, and this is really the prerequisite question in this particular circumstance, is that there was no transfer here. There has to be a transfer to be trafficking. And in this case, Mr. McCormick did not transfer these weapons to his co-conspirators. Rather, what occurred here is the co-conspirators and Mr. McCormick engaged in these burglaries, took the weapons, stole the weapons, and then divvied up the profits essentially afterwards with Mr. McCormick taking his and the co-conspirators taking theirs. There was no transfer that would even support a trafficking charge in the first instance. I took an understanding among his co-conspirators and he that there would then be a transfer. I'm sorry. I said, I thought it was in the record that there was a discussion or understanding between Mr. McCormick on the one hand and his co-conspirators on the other that there would be further transfer of those firearms and there would be an exchange for drugs as well. Well, I mean, it depends. There's information in the motion for downward departure, which I don't think can be considered that could support those conclusions, Your Honor. As far as the record that I see that was before the district court that was actually considered and submitted by the government, no, there was not, didn't go into that level of granular detail, although the assumption can be made, of course, that Mr. McCormick was going to sell the firearms for profit and then at some point perhaps share more of the profit with the co-conspirators, but it didn't go to the point that the transfer itself was going to be somebody who Mr. McCormick should, would, could know was going to engage in illegal activity. And again, so what we have here is the absence in the actual evidentiary record considered by the district court of any information to support that Mr. McCormick knew or should have known that these individuals would use these firearms illegally. You have another piece of information that is the motion for downward departure that was not submitted by the government before, that it has waived any right to rely upon at this point in time, and that even if considered, we don't have a record that was sufficiently developed in order to allow it. And again, at the end of the day, you don't have a finding under B-5. So very clearly, this was a procedurally unreasonable sentence. It was one imposed. But you should go back for a new hearing. I don't believe you do. I think at the end of the, oh, well, no, I think what you go back is you vacate the judgment of sentence, and you do remand for resentencing. I agree with that. Thank you, Your Honor. Thank you, Mr. Sorensen. We'll hear you on rebuttal. Mr. Rochtaschel. May it please the court, George Rochtaschel, on behalf of the United States. I would like to, first of all, correct the record here. The sentencing in this case consisted of two parts. The first part dealt with a motion that was filed by the United States. And in that motion, the government laid out in copious detail the defendant's use of the guns and transfer of the guns to other individuals who intended to use them in connection with drug crimes, specifically drug possession and drug trafficking. That record was considered by the district court. Although the district court misreferenced the subsection that he was ruling upon, B6B, the district court knew it was ruling on a B5 objection based on the defendant's objection, the defendant's argument at the sentencing hearing, and the defendant's sentencing submission, its sentencing memorandum. What's the harm in sending it back? I don't recall, maybe it's happened, but I don't recall it happening in my experience that the district court cited the wrong guideline. There's no dispute about that. So isn't the prudent thing to do to note that fact and just summarily remand it and have the district court do it over again? I understand your argument to sort of be, well, yes, the district judge mentioned the wrong guideline, but we all sort of know what happened here. It was just a, he misspoke. So trust us, he misspoke. But isn't that a little imprudent? Isn't the prudent thing to do to send it back and say, well, tell us what you really meant? I think that would be prudent. That would be on the high end of the prudent scale. We submit that the court does have an intermediate option to simply affirm here, basically because the district court never had to rule on the B-6 objection because the defendant never objected to the application of B-6 at sentencing. The only issue that was on the table for ruling was the B-5 trafficking objection. Counsel, we'd have to have a lot of confidence that they misspoke, but the words the court used could have referred to B-5 or B-6. They're fairly similar in essence, but they have different requirements. Let's assume that we think this was an error, and let's assume that the error is plain. Do you have an argument for us on prong three, which I was asking your friend, Mr. Sorenson, about why this wouldn't have affected substantial rights? Well, we don't think it would affect substantial rights for a number of reasons. First of all, the sentencing record looked at in its completed state demonstrates that there are more than enough facts to support enhancements both for B-6 and B-5. Okay. So that's saying there were enough facts to support it, but the substantial rights is a little different. Is there a reasonable... How can we say there's no reasonable probability of a different result? Your friend on the other side says there was nothing in the PSR. He raises doubts about whether these might have been self-incriminating statements that were barred because they were made under cooperation. There was no fact-finding about, you know, that would have overcome 1B1.8a. What do you say in response to that? Why is it that there's no reasonable probability the judge could have gone the other way? Well, we think that the district court cited factors that certainly supported a B-5 enhancement and they related back, in our view, and we think it's a reasonable inference to the first part of the sentencing record, the admissions made by the defendant. The court referenced the quantity of stolen firearms sold. The court referenced the multiple sales to the same individual who we submit, just looking at the plain language of the defendant's admissions, would be YB, and that the individual was a known drug trafficker. That doesn't seem to be in dispute that this individual who received 14 guns in exchange for heroin was, in fact, a drug trafficker. And it seems pretty clear, but why not make a record of that? And that, again, I think on the outer limits of prudence, the upper limits of prudence, that's certainly a way to go. But we submit that it is well settled that appellate courts, if there is some theory in the record or facts in the record that support the district court's ruling, even if the district court in this case committed what we would submit as a less serious procedural error in misreferencing the applicable statute, the court could still affirm based on that. Yeah, it's an interesting case because if you remember what happened in Zabilski, we held that the court erred in applying the guideline provision, but we still affirmed the sentence. But we did that because it was essentially a harmless error principle, right, that the sentencing judge had made clear that she was going to impose the downward variance because of the 3553A factors irrespective of the guidelines error that she made. So the guidelines error was rendered immaterial. Here, it's different because he cited the wrong guideline, but you've got some facts to support what the court did, but it just doesn't seem that those facts were properly presented and adjudicated and the defendant didn't have the opportunity to try to meet those facts and rebut them at the hearing, did he? Well, no, he didn't because given the nature of the motion, I think there was some level of circumspection in the second half of the sentencing proceeding. Circumspection that, of course, benefits the defendant. Because of his cooperation. That's correct, Your Honor. Yeah. And our position is that the district court in the context of its ruling was ruling on B-5. There really is no, we don't think there's any reasonable basis to dispute that, although in the interest of being prudent, the court could send it back. That's not our position. And we think that any findings that if it was sent back will simply perhaps add additional layer of detail. But the core findings that the district court made, the factual findings, not the legal conclusion, would ultimately be the same. So the defendant is really not substantially prejudiced if the court would decide to affirm based on those three critical facts that I identified that the district court cited, and albeit to an erroneous section of the guidelines. One that the court had already ruled, well, actually you didn't have to rule upon, but factored into its sentencing calculation. If the court has no other questions. Judge Greenaway, do you have any questions for Mr. Rock Tashel? Thank you, Judge Hardiman. I appreciate it. Just one question. So suppose for a moment that the judge had referred throughout the sentencing proceeding to B-6 and not B-5 at all. So it was just a complete mistake, complete error. In that circumstance, I presume you'd have no objection. In fact, you'd endorse sending it back. Well, if it was going back for the specific purpose for the district court to clarify that, I think that's certainly an option that would be reasonable under the circumstances. But in that circumstances, hypothetical circumstance, there'd be no way to affirm, right? Well, no, because I think it would be clear in that circumstance that the district court was perhaps fatally mistaken about what guideline he was ruling on. But here we know that the court acknowledged that it was a B-5 objection at the beginning of the second part of the sentencing proceedings, and the parties argued trafficking. They argued the B-5 objection, and the court made findings apropos to the B-5 objection, but mistakenly referenced B-6. All right. Thank you so much. Thank you, Your Honor. There are no other questions. That would conclude my argument. Thank you very much, Mr. Rock Tashel. We'll hear rebuttal from Mr. Sorenson. Thank you, Your Honor. Could I get you to focus on two specific things that I think are at the nub of the disagreement? The first one is preservation. You've stressed correctly that in Appendix 72, counsel below clearly objected to the B-5 increase. But two pages later, the district court makes a procedural error. And you've said, well, you've treated it as if it's preserved because you did mention it on appeal. But I thought under Flores Mejia that for procedural error, you have to object to it at the time. It's not enough as with substantive unreasonable as just to ask for a lower sentence early in the proceeding. Do you have any basis to dispute that this was a forfeited error? Well, I think at that point, I think the discussion by counsel that subsection B-5 was applicable in the later reference by B-6, at which time the district court immediately moved on to the sentencing. OK. But why shouldn't we slice it this way to say he preserved an objection as to whether B-5 applied? But he did not preserve a procedural objection as to whether the court misspoke in using B-6 instead of B-5. Because I don't think that was a procedural objection that needed to be made. What the court held was B-6 applies. What the court never held was B-5 applies. OK. That depends on how we characterize it. Your friend wants to characterize it. Oh, it's just nomenclature misspoke. But I understand that that disagreed. But there was no basis for us to object because the court was ruling on something we had already agreed. B-6 applies. We had already said that. When the court said it, there was no reason for us to do anything different at that point. OK. Before you get to the second one, if I may, please, because it's on the floor. I don't get something, counsel. On the floor is a point that Judge Bibas just made. Counsel has the obligation, if you're going to make a B-6 argument later, to, at that point in time, preserve it by stating it on the record. I don't quite understand your argument as to why that failure isn't fatal. Well, because we weren't making a B-6 argument. We never intended to. We had already accepted that B-6 applied. So when the court said, in appendix 72, that B-6 applies, that was not something we would object to because we were never going to make a B-6 argument. We never did. What the court never did was rule on our objection to under B-5. And we had no reason to keep on restating that. I mean, we could have. But that's not a waiver. That's a simple district court fail to address. All right. Now, I want to go back to prong three of Olano. Let's assume we disagree with you here and we think Flores Mejia means that this counts as a forfeiture. We go through Olano. Let's spot you that there's an error and that it's plain. Your friend's argument at the other side boils down to all the facts that the district court actually found. There were multiple firearms sold. There were multiple sales to the same individual. And that individual has been known to engage in drug trafficking. So we have all those at appendix 72. Don't those equally support a B-5 argument? Having made those findings, how is there a reasonable probability that this mention of one versus the other affected the outcome? Don't those same things compel a finding that the B-5 enhancement applies? I do not believe so, Your Honor. And the fundamental problem with the district court's finding in that regard, and again, what he essentially found, and I'll just repeat exactly what you said, which is what we have here and what supports the enhancement. Now, let's consider it for B-5. What supports the B-5 enhancement is that Mr. McCormick transferred a number of firearms to the same individual on a couple of occasions, and he did so to this individual who was known to be a drug trafficker. What that doesn't get to in the fundamental question under B-5 is whether Mr. McCormick knew that that individual was a drug trafficker and would use the firearms. You never had that finding, what you have, but the district court is simply a statement that this guy was a drug trafficker. Mr. McCormick transferred firearms to him. What you don't have is the fundamental connecting inquiry, where it says Mr. McCormick knew that. But didn't Mr. McCormick tell the investigators that he gave a gang member 14 guns in exchange for $6,000 and an ounce of heroin? That was in, again, the motion for downward departure, and I did want to make one more point, if I may, on that, and what kind of a fundamental point as to why it cannot be admitted or considered for these purposes, and it gets to something my colleague was saying, which is- You don't have to persuade me of that. But that raises another question, which is, it seems like an idle exercise, because if we summarily vacate and remand, then the government is going to put into evidence what I just mentioned, right? I mean, I think remand is a very minimum necessary here, but I don't think remand should not even occur at this point in time, because that would be giving the government a second bite at the apple when the record is already before the district court, and it's clear that the district court's record could not be considered. And that's even if you talk about the downward departure motion. And the point I wanted to make, and the reason these two proceedings were separate, is the downward departure motion and those allegations were submitted under a very specific exception to 1B1.8, and that is A5, which permits those allegations to be considered only in the context of a downward departure motion, not in any other type of proceeding. A1 is the exception you would have to rely on to get them into the sentencing proceeding itself. That's why they weren't considered at the sentencing proceeding. That's not circumspection. That is because they were not admissible. So there is no reason for this court to- You're saying misinformation is not admissible at the sentencing here? It was not, because the government did not seek to admit it under A1. The exception- No, but on remand, they will. But I don't think there's any reason to remand. That would be giving the government a second chance- You don't want to remand. No, I think- I thought you did want to remand. But I think the remand, if I'm under- How can we undo the sentence without remanding? There's going to be a remand, but I think there's two types of remand, if I heard correctly. One of the types of remand would be a remand for clarification or something of that sort. That I don't think is appropriate, because the record before the district court, however you slice or dice it, could not support a finding under B5 as it stands. So there's nothing to clarify, even if the district court misspoke, even if you considered that it made its finding. And I want to make that clear. Even if we considered there was no- that the mistake was just one in a statement. I referenced B6. I meant B5. Let's take that as a given. If this court accepts that and reviews this case as it normally would, in a case in which the district court referenced the proper provision, that district court record is insufficient to support the finding, and what this court would traditionally do, and what it should do here, is say that the provision, that is B5, cannot be applied. Remand for resentencing without that enhancement. I don't understand why we would tie the district judge's hands on remand. Why not just say, you know, look, you mentioned the wrong guideline here. We're not quite sure what you're up to. Do it again, please. Isn't that the normal course? I think if you get to the point where you say, let's accept for these purposes that the district court meant B5. Let's assess this as a normal, normal case, in which we take the record as it stood before the district court and see whether its finding under B5 could be supported. In this case, it cannot be supported. The record is insufficient to support a B5 finding, so there is no basis to remand, because even if we ignore the mistake,  We're remanding and vacating the judgment because of an insufficiency of the evidence problem, and that's what you have here, and it should not be remanded for clarification. Insufficiency of the evidence. When we're at trial, we're dealing with double jeopardy considerations. Yes, we don't send that back. There's no similar doctrine at sentencing, though. Well, you know what we normally do in Cicerello, a lot of other cases in which these enhancements haven't been applied. The court is not for the court after it finds the evidence insufficient to meet the preponderance of evidence standard on a sentencing enhancement. Cicerello is so different. In Cicerello, the government and the court admitted that there wasn't evidence to support the enhancement. Here, the government's pushing for the enhancement, and the judge says something that I think we all agree was erroneous. We're not quite sure why or what he meant by it. Well, I think the answer here is, again, to get back to the point, the government bore the burden, of course, in the sentencing proceeding at the first sentencing hearing to produce enough evidence to sustain its burden of proof. It did not do so on the B-5 enhancement. It should not get a second bite at the apple, regardless of what the district court's ruling was, whether it was mistaken or not. The government already failed to meet its burden of proof, and that's a tradition of this court in sentencing proceedings as well. We don't just give the government another opportunity once it's already failed in that regard. The court has no further questions? Judge Greenlee? No, sir. I'm fine. Thank you so much. All right. Thank you very much, Mr. Sorenson. Thank you. Thank you, Mr. Rochtaschel. The court appreciates the excellent argument. We'll take the matter under advisement.